UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVIE ALLAN WEST,

        Plaintiff,

v.                                                                    Case No. 17-C-1206

DEPUTY MARIO ESCUDERO,
DEPUTY ZACHARY WILDERMAN,
DEPUTY KYLE COLBURN,
DEPUTY JUSTIN TREDER, and
DEPUTY ASHLEY SCHROEDER,

        Defendants.

## DECISION AND ORDER GRANTING MOTION
## FOR SUMMARY JUDGMENT

On September 6, 2017, Plaintiff Stevie West, who is representing himself and is currently incarcerated at the Columbia Correctional Institution, filed this complaint pursuant to 42 U.S.C. § 1983, alleging that officers of the Winnebago County Sheriff's Department violated his constitutional rights by using excessive force on him while he was incarcerated in the Winnebago County Jail (WCJ). On May 9, 2018, Defendants moved for summary judgment. For the reasons expressed below, Defendants' motion will be granted and the case will be dismissed.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

"At the summary judgment stage, the facts must be viewed in the light most favorable to the nonmoving party only if there is 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). However, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record is taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

West has failed to properly respond to the motion for summary judgment. Pursuant to Civil Local Rule 7(d), "[f]ailure to file a memorandum in opposition to a motion is sufficient cause for the Court to grant the motion." Additionally, West has failed to properly dispute the defendants' proposed findings of fact. Civil L.R. 56(b)(2)(B). Pursuant to Civil Local Rule 56(b)(4), the Court will deem admitted, for purposes of summary judgment, any uncontroverted, or undisputed, statement of fact. West is, however, representing himself and, as such, his pleadings are to be read liberally. West has submitted an affidavit and a declaration that contain his version of the events but contradict the video recording submitted by Defendants.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Where a video recording exists, and "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened," a court must view "the facts in the light depicted by the videotape." *Id.* at 378–81. The court will therefore view the facts in the light depicted by the videotape.

## BACKGROUND

On December 30, 2016, West was booked into WCJ as a pretrial detainee. Defs.' Proposed Findings of Fact (DPFOF), ECF No. 48, at ¶ 16. Over the months that followed, West repeatedly refused to comply with WCJ's rules, threatened and assaulted correctional staff, and intentionally damaged County property. In particular, West threatened to sexually assault, spit on and throw urine at jail staff; smeared feces on his cell window; and damaged the trap door and the suppression sprinkler fittings in his jail cell. *Id.* at ¶ 17; Aff. of Mark Binder, ECF No. 38, ¶ 6. Because of his dangerous and destructive behavior, WCJ staff decided to place West on a STEP program in which privileges, property and equipment would be removed from West's cell with the opportunity for him to get it back as his behavior improved. DPFOF ¶ 18.

WCJ staff decided to explain the STEP program to West in the dayroom after his shower on August 5, 2017. *Id.* at ¶¶ 18–19, 26. Corporal Binder, Deputy Nienhaus, and Deputy Vue were in the dayroom. Given West's history, a Correctional Emergency Response Team (CERT), consisting of Defendants Colburn, Escudero, Wilderman, and Treder, was assembled just outside of the cell block and stood by in case the situation deteriorated. These defendants were dressed in

protective clothing and helmets with face shields. *Id.* at ¶ 20. Deputy Schroeder was also outside of the cell block with a restraint chair, in case one was needed. *Id.* at ¶ 21. Patrol Captain Eichman operated a video camera and recorded the incident. *Id.* at ¶ 22.

West entered the dayroom and was restrained in handcuffs, which were attached to a velcro waist restraint strap but not leg restraints. *Id.* at ¶ 25. West was ordered to sit at a table in the dayroom. *Id.* at ¶ 25. The video shows that as Binder explained the STEP program to West, West became agitated and yelled at the officers. ECF No. 41 at 06:30. West stood up and an officer ordered him to sit down. *Id.* at 07:00. West did not comply and began walking toward his cell, so Nienhaus and Vue approached him. West began rolling his shoulders and flexing his arms, then yelled, "What the fuck?" In response, an unseen officer, presumably Eichman, ordered the CERT officers to enter the room. *Id.* at 07:19. The CERT officers entered the dayroom and approached West. One officer put West in a bear-hug, while another took hold of West's arm. The third officer was near West's feet, and the final officer stood on the West's other side. The officers then guided West to the ground, and one officer laid across West's shoulders, the second put pressure on his back, and the last two restrained his legs. Once West was restrained, the other officers entered West's cell and removed its contents.

The video shows that West struggled and began to yell, and the officers told him to relax. *Id.* at 08:00. Intermittently, West complained that he was in pain. *Id.* at 08:49. Another officer restrained West's face to prevent him from spitting at the officers, and the officer lying cross West's shoulders removed himself and restrained West's arms. A couple minutes later, West complained about his handcuffs and called the officers "racist-ass crackers." *Id.* at 10:30, 11:00. After the

4

officers cleared the cell, officers helped West from the ground to escort him into his cell. *Id.* at 11:45.

West continued to struggle with the officers once he was on his feet. As he was placed in his cell, West spit at Schroeder through the door crack and struggled with the officers when they attempted to remove the restraints. He yelled, "Get this mother-fucking Mexican off of me. Get that fucking spic away from me, man." *Id.* at 12:45. West jerked his arm away from officers, resulting in the officers directing him to the floor and attempting to physically restrain him to remove the handcuffs. *Id.* at 13:00. The officers told West to cooperate and relax. West asked for his asthma pump, and officers respond that they would give it to him. West nevertheless continued to resist officers and called one a "bitch." *Id.* at 15:00. The officers turned West from his stomach onto his side to sit him upright. Once upright, West refused to follow the officers' orders and spit at them. *Id.* at 15:30. An officer warned West that he would tase him if he continued to refuse to follow orders. *Id.* at 16:15. West replied, "I'm going to kick that Mexican as soon as I get a chance. I already kicked him once. I hope he files charges." *Id.* at 17:00. As the officers attempted to remove the handcuffs again, West asked for one of the officer's names. Colburn identified himself, and West responded, "You a mother-fucking klansman. This is mother-fucking Aryan nation." *Id.* at 17:23. The officers asked West to remain calm, and West yelled, "Get the Mexican off me first." *Id.* Eventually, the restraints were removed, and the officers exited the cell. *Id.* at 17:51. After the door closed, West stood up, approached the window, and yelled at the officers.

The entire incident spans less than twenty minutes. After placing West in his cell, the officers asked West if he needed medical attention. DPFOF at ¶ 54. West asked for and received his inhaler. *Id.* at ¶ 55.

On September 6, 2017, West filed this complaint pursuant to 42 U.S.C. § 1983, alleging that the officers tackled him while he was handcuffed and used excessive force. *See* ECF No. 1. October 11, 2017, the Court screened West's complaint and allowed him to proceed on a claim of excessive force against Defendants Escudero, Wilderman, Colburn, and Treder. ECF No. 12. West was also allowed to proceed on a claim against Defendant Schroeder for failing to intervene when excessive force was being used. *Id*. On May 9, 2018, Defendants moved for summary judgment. ECF No. 36. On June 7, 2018, West filed an affidavit, describing his version of the events. ECF No. 50. He did not, and has not, filed a brief in opposition or a response to Defendants' proposed findings of fact. On June 21, 2018, Defendants filed their reply in support of their motion and highlighted West's failure to properly respond. ECF Nos. 51, 52. On June 29, 2018, West filed a declaration and asked the court to accept his declaration instead of his affidavit. ECF No. 54. The matter is now ripe for decision.

**ANALYSIS**

West alleges officers used excessive force on him during the August 5, 2017 incident. At the time of the incident, West was a pretrial detainee. A pretrial detainee's claim of excessive force is governed by the Due Process Clause of the Fourteenth Amendment. The "Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).

In *Kingsley*, the Court explained that excessive force is solely an objective, not subjective, determination and that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2472–73. Objective reasonableness turns

6

on the "facts and circumstances of each particular case." *Id.* at 2473. "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* In assessing the conduct of the officers, "a court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal quotation marks and citations omitted). Finally, the following considerations are among those that may bear on the reasonableness of the force used: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

It is clear from the videotape of the incident that the officers' use of force was reasonable. Throughout the entire video, West resisted officers, refused to follow orders, physically struggled and pulled away from officers, yelled at officers, hurled racist insults and profanities at officers, kicked officers, threatened to harm officers, and repeatedly spit at officers. The officers, in turn, used only such force as was necessary to gain control of West and prevent him from harming the officers. West's refusal to comply with the officers' directions and the racist epithets and profanities he hurled at them were met by restraint and a single-minded goal of restraining him until his cell could be emptied of property and he could by safely placed in it. Whatever discomfort West experienced in the process was due entirely to his own resistance. Indeed, the need to place him in the STEP program to begin with was because of his repeated abusive and destructive behavior. No

7

rational trier of fact would find the officers' use of force objectively unreasonable. As a result, Defendants are entitled to summary judgment.

West also claims that Schroeder failed to intervene to prevent the alleged excessive force. Schroeder was in no position to intervene, but more importantly, "[i]n order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (citing *Fillmore v. Page*, 358 F.3d 496 (7th Cir. 2004)). Here, there was no violation of West's rights. It thus follows that West's claim for failure to intervene against Schroeder fails as well. Because the court concludes Defendants did not violate any of West's constitutional rights, there is no need to address Defendants' defense of qualified immunity.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (ECF No. 36) is **GRANTED**, and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   28th   day of December, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court